Richard S. Heller, J.
On October 20, 1964, at approximately 10:00 a.m., a telephone call was received at the Gowanda State Hospital reporting that an elderly woman was walking along the middle of U. S. Route 62, a short distance north of the Village of Gowanda. She was said to have been directing or disrupting traffic; and apparently, her erratic behaviour led the informant to assume that she might be a patient at the hospital.
Shortly thereafter, a woman who had driven past the elderly lady drove to the hospital and told a similar story to one of the head nurses. The nurse, who was temporarily replacing the supervisor and occupying his office, assigned one of the staff nurses to drive to the scene of the alleged incident with a security officer. Notification was also given at this time to the chief supervising nurse of the institution.
The assigned nurse and security officer testified that they drove approximately five miles from Gowanda along Route 62 to North Collins where they turned around and returned to the hospital. Neither of them saw anyone meeting the reported description of the elderly lady on or along the highway.
At approximately 1:45 p.m., it was brought to the attention of the chief supervising nurse that a Mrs. Sarah Shoemaker, an elderly patient, had been missing since about 9:30 a.m. Mrs. Shoemaker’s family and police agencies were notified of her apparent elopement, and a peremptory search of the grounds was made during the afternoon with no success. The chief supervising nurse testified at the trial that she saw no connection between the two reports.
On Wednesday, October 21, active searching was discontinued on the alleged assumption recorded in the hospital records that Mrs. Shoemaker was probably en route to Arizona to visit a son. No check was made, however, to determine whether she had a purse or any money with her.
Montgomery J. Shoemaker, the decedent’s son and the claimant herein, continued in the days following to badger the hospital authorities without much apparent effect. Finally, on October 25, five days after his mother’s disappearance, he organized a searching party of approximately 30 acquaintances who began to search all highways leading out of Gowanda. At some time *1044 in the afternoon of October 25, while the search was going on, a security officer at the hospital told Mr. 'Shoemaker of the report concerning the elderly female pedestrian on Boute 62. At this point, the searching party concentrated on Boute 62 and adjoining properties for the remainder of the daylight hours.
Although claimant and his volunteers were unsuccessful, his mother’s body was found on October 27, approximately 1/10 of a mile north of the point where darkness had forced suspension of the search. Her body was lying at the edge of a corn field approximately 50 feet from the highway, and the parties stipulated that the pathologist who performed an autopsy would testify “ that in his professional opinion, based on the autopsy and his information regarding her in that regard, that she died within 12-24 hours before the date she was found. ’ ’
This claim is for Mrs. Shoemaker’s alleged wrongful death and is based upon assertions that the proximate cause of her death consisted of the negligence of State employees at Growanda State Hospital. A notice of intention and the claim were duly filed by the claimant as limited administrator of his mother’s estate.
Pursuant to departmental regulations, no notice of the elopement was given to public news media. While such notification might in many cases result in the prompt discovery and return of patients, there were obviously valid reasons for attempting to avoid the notoriety which would necessarily follow. The local and State police and the family were promptly notified, and recovery cannot be predicated upon adherence to a valid and reasonable regulation adopted for the protection of patients and their families from possible embarrassment.
The absence of any co-ordination or efficiently organized effort on the part of the hospital staff is another matter entirely. It is very unfortunate that no connection was recognized between the reports of an elderly and disoriented pedestrian on a local highway and Mrs. Shoemaker’s disappearance. In view of her condition, the bland assumption that she had decided to visit a son in Arizona was an easy out, especially since no attempt was made to determine whether she had taken a purse and money with her. The negligence attributable to the State is clear and discussion of authorities and standards of care is deemed unnecessary.
The determination of appropriate damages, however, presents very difficult problems. The decedent was a 70-year-old widow with an aetuarially determined remaining life expectancy of 13.62 years. Very little in the way of pecuniary loss by the claimant and her other children is demonstrated by the record. *1045 As a matter of fact, the claimant testified that her care and treatment had not been without expense to him. To make matters more difficult, no medical proof was presented or elicited with respect to the prognosis of her condition. Her past history and indications in the testimony that her condition had been getting worse rather than better, however, would prevent any assumption that her future was bright.
It was brought out that the decedent had provided a home for one of her daughters and her children and that she was religious in remembering grandchildren on their birthdays and other occasions with gifts. We have determined, therefore, that for the decedent’s wrongful death the claimant is entitled to recover the sum of $1,000 plus an additional $1,000 for funeral expenses.
With respect to the claim for the decedent’s conscious pain and suffering, no proof was submitted or in fact available as to what transpired between her elopement and death. It is reasonable to assume, however, that during the five days and especially nights prior to her estimated time of death she experienced some if not a great deal of physical discomfort. Although no yardstick is available to determine how much she suffered or how much such suffering is worth, we believe that an award in the amount of $2,000 is justifiable.
The claimant is entitled to an award in the amount of $4,000, with interest on the sum of $2,000 from October 27, 1964 to July 4, 1965, and from October 29, 1965 to the date of entry of judgment herein.